IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LEWIS SCHIFFMAN, | |
| **Plaintiff,** | |
| v. | **1:10-cv-2662-WSD** |
| AMERICAN EXPRESS TRAVEL RELATED SERVICES CO., INC., | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Janet F. King's Final

Report and Recommendation ("R&R") [56] on Defendant American Express

Travel Related Services Co., Inc.'s ("American Express") Motion for Summary

Judgment [43].

## I.    INTRODUCTION

This case arises from American Express inadvertently giving Plaintiff Lewis

Schiffman ("Plaintiff") double credit for an $843.54 payment Plaintiff made on his

credit card bill.  Several weeks later, when American Express recognized the error

it asked Plaintiff to repay the amount of the overcredit he received.  Plaintiff's

ultimate response was to assert an action claiming that American Express's efforts

to seek remittance of the overcredit given to Plaintiff violated state and federal law.

There is no dispute that the overcredit was given mistakenly.  The dispute—and it has been one that has resulted in substantial allocation of cost, expense, and judicial time—is now before the Court on American Express's Motion for Summary Judgment.

## II.   BACKGROUND

### A.   Procedural History

Plaintiff filed this action alleging violations by American Express of the Fair Credit Billing Act, 15 U.S.C. §§ 1666–1666j ("FCBA"), and the Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-390 to -407 ("GFBPA").

On September 7, 2011, American Express filed its Motion for Summary Judgment [43], along with a supporting brief [43-1] and a Statement of Undisputed Material Facts [43-2] ("DSMF").

On September 30, 2011, Plaintiff filed his brief in opposition to the Motion for Summary Judgment [47], along with responses to the DSMF [48], a Statement of Disputed Material Facts [49] ("PSMF"), and a "Statement Under Penalty of Perjury" [50] ("SUPP").  The SUPP contains sixteen (16) numbered assertions and attaches and describes twenty-two (22) documents.  The numbered assertions are prefaced with: "COMES NOW, Lewis Schiffman, who states under penalty of perjury . . . ."  Six of the numbered statements describing documents state that the

documents are "true and correct copies."  The SUPP does not otherwise represent

that the statements in it are "true and correct."  The SUPP does not contain a

handwritten signature but concludes with Plaintiff's typewritten name, as follows:

"/s/ Lewis Schiffman."  With one exception, the PSMF cites only to the SUPP.

On March 28, 2012, Magistrate Judge King issued her R&R recommending

that the Motion for Summary Judgment be granted.  As a threshold matter, Judge

King found the SUPP, as a whole and the individual portions of it, inadmissible on

three independent grounds, and she refused to consider the SUPP in the R&R.[1]

Judge King specifically found that (1) the SUPP as a whole is not a declaration for

purposes of Rule 56 because it lacks a handwritten signature; (2) ten paragraphs of

the SUPP do not form a declaration because they are not subscribed with a

statement that "the foregoing is true and correct"; and (3) the remaining six

paragraphs are inadmissible because they are conclusory.

The remainder of the R&R considers the merits of the Motion for Summary

Judgment.  Regarding Plaintiff's claim under the GFBPA, Judge King found that

Plaintiff failed to rebut or otherwise address American Express's argument that the

GFBPA does not apply to activities regulated by the FCBA.  Plaintiff argued in his

---

[1] Judge King did consider the documents attached to the SUPP because they either
were already contained in the record or "could be reduced to admissible evidence
at trial."

submission to the Court that the factors on which he bases his claimed FCBA violations also support that American Express violated the GFBPA because FCBA violations necessarily also constitute violations of the GFBPA. Judge King concluded that American Express's argument—that Plaintiff cannot assert as a GFBPA violation the same conduct that Plaintiff alleges violates the FCBA—was unopposed and recommended that the Court grant American Express summary judgment on the GFBPA claim.[2]

In evaluating Plaintiff's claim under the FCBA, Judge King concluded that the credit card at issue in the case was an extension of *business* credit and not *personal* (or *consumer*) credit. Judge King found that the FCBA does not apply to the business credit transactions at issue and recommends that the Court grant American Express summary judgment on Plaintiff's FCBA claim.[3]

On April 16, 2012, Plaintiff filed objections to certain portions of the R&R [57]. On May 3, 2012, American Express filed its response to the objections [58].

---

[2] Judge King noted that a finding that American Express did not violate the FCBA would require a grant of summary judgment on the GFBPA claim.

[3] Judge King also concluded that, even if the FCBA had applied to the Credit Card, American Express would not have violated it. Judge King specifically found that American Express's obligations under the Act would not have been triggered because Plaintiff failed to send a written notice of a billing error to a proper address within sixty days. And Judge King further found that American Express's actions would have conformed to the Act's requirements.

B.    <u>Facts</u>[4]

At the center of this case is an "American Express Delta SkyMiles®
Business Credit Card" (the "Credit Card") issued by American Express.  Judge
King found that the Credit Card had been issued to "Lewis Schiffman/Atlanta
Health Systems."  Plaintiff Lewis Schiffman is President of Atlanta Health
Systems, an unincorporated business.  Plaintiff objects to this finding and asserts
that the Credit Card was issued to:

> LEWIS SCHIFFMAN
> ATLANTA HEALTH SYSS.

(Pl.'s Obj. [57] at 9–10.)  The Court concludes that the distinction argued by
Plaintiff is immaterial for purposes of the Motion for Summary Judgment.[5]

The Credit Card was governed by an agreement entered into between the
parties (the "Card Agreement"), which provides, in pertinent part, as follows:

> This document and the accompanying supplement(s) constitute
> your Agreement.  Please read and keep this Agreement.  Abide by its

---

[4] These facts are taken from the R&R and the record.  Plaintiff filed objections to
certain factual findings in the R&R, where noted.  The Court has reviewed in this
Order those factual findings *de novo*.  With respect to the factual findings to which
an objection was not made, the Court has reviewed them and does not find plain
error in the Magistrate Judge's findings, and they are adopted by the Court.  <u>See</u>
<u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n. 9 (11th Cir.1993).

[5] As discussed more fully below, the Court finds that, no matter the styling of the
name, the Credit Card's accountholder is a natural person.

> terms.  When you keep, sign or use the Business Card issued to you (including any renewal or replacement Business Cards), . . . you agree to the terms of this Agreement. . . .
>
> **Using the Card**
>      You may use this Card to obtain goods and services from any person who accepts the Card . . . .   You agree that you will use the Card for commercial or commercial purposes. . . .
>      . . . .
>
> **Promise to Pay**
>      You promise to pay all Charges . . . on your Account.

(R&R [56] at 7–8.)  The Card Agreement also directs the accountholder to submit billing error notices in writing to an address appearing on the billing statement.

Judge King found that American Express mailed the Card Agreement to Plaintiff along with the Credit Card, when the account was first opened.  (R&R [56] at 8.)  Plaintiff appears to object to this finding, but does not cite to any record evidence to contradict the finding.[6]  The finding is supported by the Declaration of

---

[6] In paragraph 15 of the SUPP, which Plaintiff does not cite to support his objection, Plaintiff states that he "did not receive any agreements prior to the time [he] cancelled [his] account."  Even if this statement were properly before the Court, it is not sufficient to create a factual dispute.  First, the bare statement directly contradicts Plaintiff's deposition testimony that he does not recall whether he received the Card Agreement ([43-3] at 11).  See Van T. Judkins & Assocs. V. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previous given clear testimony.").  Second, the statement alone is insufficient to overcome the presumption that Plaintiff received the agreement that was mailed to him.  See

American Express's Manager of Credit Operations ([43-4] ¶¶ 5, 8), and the Court adopts it.

Plaintiff charged both personal and business expenses to the Credit Card. Between April 2008 and November 2008, Plaintiff charged $20,821.04 in business expenses and $3,944.23 in personal expenses.[7]

On May 3, 2009, Plaintiff sent a payment of $823.54 to American Express. American Express erroneously applied the payment twice, crediting $1,647.08 ($823.54 × 2) to the account's then-outstanding balance of $1,207.54. The double credit resulted in a credit balance on the account of $439.54, which was reflected on the Credit Card's May 2009 statement.

Plaintiff thereafter canceled and returned the Credit Card, and as a result, on July 28, 2009, American Express issued a check for $439.54 to refund the recorded credit balance on the account. Plaintiff cashed the $439.54 check sent to him.

---

Krutchik v. Chase Bank USA, N.A., 531 F. Supp. 2d 1359, 1364–65 (S.D. Fla. 2008) (explaining the presumption that a cardholder received a mailed credit card agreement and the requirement that the cardholder present substantiating evidence to overcome the presumption); see also Konst v. Fla. E. Coast Ry. Co., 71 F.3d 850, 851 & n.1 (11th Cir. 1996); Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992).

[7] From December 2008 through May 2009, Plaintiff charged an additional $5,947.73 to the Credit Card. The record does not indicate whether these charges were for business or personal expenses.

In early September 2009, American Express realized its error in double-crediting the account for the $823.54 payment.  It mailed Plaintiff a letter notifying him of the error and advising him that a balance due of $823.54—the credit he mistakenly was given—would appear on a billing statement sent to him.

On September 21, 2009, American Express sent a billing statement reflecting the $823.54 balance.[8]  The billing statement contained three addresses, including one for "Customer Service" and another for "Payments."  Plaintiff received the billing statement, but did not remit to American Express the amount of the credit he was mistakenly given.

American Express sent subsequent billing statements in October and November 2009, and added late fees and finance charges to the balance due. Plaintiff received these statements but did not pay the balances reflected on them.

On December 4, 2009, Plaintiff wrote to Jud Linville, American Express's then-President of Consumer Card Services, at an address in New York City.  Mr.

---

[8] In his objection to the R&R, Plaintiff appears to object to a finding that he owed American Express this outstanding balance.  Judge King did not make such a finding.  Judge King found only that American Express billed Plaintiff for this amount and the method by which American Express calculated the amount.  The Court notes that Plaintiff's underlying liability to American Express is not material to the Motion for Summary Judgment.

Linville's address does not appear on the Credit Card's billing statements. Plaintiff made the following statements in his letter:

1) By mutual agreement this account was paid in full and closed . . . . Therefore, we have no contract and no agreement and American Express is not entitled to charge me or collect any interest or late fees of any kind.

2) Any money I received after the account was closed was offered by your company without a claim or request from me.

3) To date I have received no documentation that would warrant my consideration to return any money to your company.

(R&R [56] at 11.)

Plaintiff's letter was received on December 12, 2009, and the matters in it were investigated. On December 30, 2009, Lace Mutti, Mr. Linville's assistant, responded to Plaintiff's letter. Ms. Mutti wrote:

Thank you for your correspondence to Jud Linville. After review, Mr. Linville has asked me to respond on his behalf. . . . Upon review of your files, it is apparent that your payment of $823.54 on 05/03/09 was credited twice. This double credit appeared on your 05/22/09 statement. On 09/10/09, the duplicated credit was corrected. This correction appeared on your 09/21/09 statement. Our records indicate that once the correction was done, payments were not made in accordance with the Card member Agreement.

(R&R [56] at 13.) Plaintiff received this letter.[9]

---

[9] Plaintiff alleges that, on January 12, 2010, he wrote another letter disputing the Credit Card balance to American Express—not in response to Ms. Mutti's letter of December 30, 2009, but in response to a different letter Plaintiff "believe[s he]

After receiving Ms. Mutti's letter of December 30, 2009, Plaintiff did not pay the outstanding balance on the Credit Card.  American Express ultimately reported Plaintiff's delinquency to credit bureaus.

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   *Review of a Magistrate Judge's Report and Recommendation*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1) (Supp. IV 2010); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. Rep. No. 94-1609, at 4 (1976), *reprinted in* 1976 U.S.C.C.A.N.

------

received from" another person at American Express dated December 22, 2009. Plaintiff also alleges that, on January 29, 2010, he wrote another letter to American Express in response to a letter he received from the company dated January 25, 2010.

6162, 6163)).  With respect to those findings and recommendations to which a party has not asserted objections, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

### 2.   *Summary Judgment Standard*

Upon motion by a party, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999) (per curiam).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999)

(per curiam).  Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "'*to the extent supportable by the record*.'"  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (per curiam) (emphasis in original) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.

"If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, this requirement "extends only to 'genuine' disputes over material facts," meaning "more than 'some metaphysical doubt as to the material facts.'"  Garczynski, 573 F.3d at 1165 (quoting Scott, 550 U.S. at 380).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

12

'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475

U.S. 574, 587 (1986).

      B.    <u>Analysis</u>

      Plaintiff filed objections to four of the recommendations in the R&R:

(1) that the SUPP is inadmissible for purposes of the Motion for Summary

Judgment; (2) that the FCBA does not apply to this case because the Credit Card is

not an extension of consumer credit; (3) that, even if the FCBA did apply,

American Express would not have violated it; and (4) that Plaintiff failed to oppose

American Express's argument as to why the GFBPA should be dismissed.  The

Court reviews each of these recommendations *de novo*.

      1.    *Admissibility of the SUPP*

      Magistrate Judge King determined that the SUPP submitted by Plaintiff in

opposition to the Motion for Summary Judgment was inadmissible.  Plaintiff

objects.

      The Court finds it unnecessary to address the objection because the SUPP,

even if it was a proper declaration, does not create genuine issues of material fact.

As noted above, each of Plaintiff's objections to Judge King's factual findings are

either objections to facts that are not material to the Motion for Summary

Judgment or are facts that are not sufficiently established by the SUPP.[10]

Accordingly, this objection is overruled as moot.

> 2. *FCBA Claim*
>
> > a. Applicability of the FCBA to the Credit Card

The FCBA, which forms part of the Truth in Lending Act ("TILA"), prescribes certain procedures for the resolution of billing disputes between creditors and borrowers. <u>See generally</u> 15 U.S.C. §§ 1666–1666j (2006 & Supp. IV 2010). It applies only to "extension[s] of consumer credit." <u>Id.</u> § 1666(a); <u>see</u> Am. Express Co. v. Koerner, 452 U.S. 233, 240 (1981) ("If there has been no extension of 'consumer credit,' the section imposes no obligation upon a creditor . . . ."). A credit card is an extension of "consumer credit" only when (1) the accountholder is a natural person and (2) the credit extended under the card is "primarily for personal, family, or household purposes." <u>See</u> 15 U.S.C. § 1602(i) (Supp. IV 2010); <u>Koerner</u>, 452 U.S. at 241.

---

[10] If a review of Judge King's finding as to the SUPP were necessary, the Court would agree that the SUPP is not admissible. The document is not a "declaration" for purposes of Rule 56 because it is not signed and it does not contain a statement that its contents are "true and correct." <u>See</u> 28 U.S.C. § 1746 (2006). A typewritten name is not a signature. (The Court's local rules, cited by Plaintiff, create an exception to the general handwritten signature requirement only for electronic court filings made by attorneys. <u>See</u> LR App. H, Ex. A § II.C, NDGa.) And § 1746 unequivocally requires an express declaration "under penalty of perjury . . . that the foregoing is true and correct."

Judge King found that the accountholder of the Credit Card is a natural person because Atlanta Health Systems, an unincorporated name under which Plaintiff conducts business, is a sole proprietorship indistinguishable from Plaintiff himself.  See, e.g. Miller v. Harco Nat'l Ins. Co., 552 S.E.2d 848, 851 (Ga. 2001).  The Court agrees and adopts this finding.  Judge King further found that the Credit Card is not primarily for personal, family, or household purposes.  Plaintiff objects to this finding.

To determine whether a credit transaction is personal under TILA, courts look to the purpose for which the credit was extended and to "the transaction as a whole."  See Tower v. Moss, 625 F.2d 1161, 1166 (5th Cir. 1980).  In this case, the purpose for which American Express extended credit to Plaintiff is clear: the Card Agreement expressly states that the Credit Card must be used "for commercial or business purposes."

The "transaction as a whole" in this case is a series of transactions— purchases made with the Credit Card.  Plaintiff charged at least $20,821.04 in business expenses, and he charged no more than $9,891.96 in personal expenses.[11]

---

[11] As noted above, the record establishes that Plaintiff charged $3,944.23 in personal expenses and that $5,947.73 is uncategorized.  Drawing all inferences in favor of Plaintiff, the Court assumes that the latter charges could have been personal expenses.

Thus, the vast majority of the credit extended, at least two-thirds, was for business

purposes, the purpose for which the Credit Card was issued.  The Court concludes,

as did the Magistrate Judge, that the "transaction as a whole" is a business

transaction.[12]  That Plaintiff used the Credit Card to make a number of personal

purchases does not convert the business use for which the card was issued to the

issuance of the card for consumer purchase purposes.[13]

Because the record in this case establishes that the Credit Card was not an

"extension of consumer credit," the FCBA cannot apply to the Credit Card.

Accordingly, the Court must grant summary judgment to American Express on

---

[12] Plaintiff argues that the transaction can be classified as personal because the number of individual personal charges to the Credit Card exceeded the number of business charges.  But the Court must look at the transaction *as a whole*, not to the individual charges that comprise it.  See Tower, 625 F.2d at 1166; see also Koerner, 452 U.S. at 242–43 n.10 (recognizing that, in the case of general credit card billing errors, the only relevant inquiry may be the overall purpose of opening the account because the error would not arise from any particular charge).

[13] There also is no evidence in the record that would have put American Express on notice that Plaintiff was using the Credit Card for principally personal expenses.  There is no authority that the Court is aware of that a person to whom a card is issued for business purchases—to which the FCBA does not apply—can unilaterally convert the card to a card for personal, consumer use—to which the FCBA could apply.  The permitted use of the card as allowed under the cardholder agreement governs the nature of the card on whether the FCBA applies.  Cf. Martin v. Wells Fargo Bank, 110 Cal. Rptr. 2d 653, 660–61 (Cal. Ct. App. 2001); Citibank (S.D.), N.A. v. Mincks, 135 S.W.3d 545, 554–55 (Mo. Ct. App. 2004).

Plaintiff's FCBA claim.  Plaintiff's objection to this finding in the R&R is overruled.

> b.   American Express's Compliance with the FCBA

Judge King next determined that, even if the FCBA had applied to the Credit Card, American Express complied with its requirements.  Plaintiff objects. Because the Court has determined that the FCBA does not apply—because the Credit Card was not an extension of consumer credit—this objection is not required to be addressed, and accordingly, Plaintiff's objection to this finding in the R&R is also overruled.  Nevertheless, if the Court considered the objection, the Court would agree with Judge King's findings on this issue and overrule the objection.

In <u>Koerner</u>, the Supreme Court succinctly set out the basic requirements of the FCBA:

> [15 U.S.C. § 1666] applies whenever a creditor transmits to an obligor "a statement of the obligor's account in connection with an extension of consumer credit."  If the obligor believes that the statement contains a billing error [as defined in 15 U.S.C. § 1666(b)], he then may send the creditor a written notice setting forth that belief, indicating the amount of the error and the reasons supporting his belief that it is an error.[14]  If the creditor receives this notice within

---

[14] The notice must be received at the "billing inquiries" address disclosed on the monthly statement.  <u>See</u> 15 U.S.C. § 1666(a) (cross-referencing 15 U.S.C. § 1637(b)(10)).

> 60 days of transmitting the statement of account, [§ 1666(a)] imposes two separate obligations upon the creditor. Within 30 days, it must send a written acknowledgment that it has received the notice. And, within 90 days or two complete billing cycles, whichever is shorter, the creditor must investigate the matter and either make appropriate corrections in the obligor's account or send a written explanation of its belief that the original statement sent to the obligor was correct. The creditor must send its explanation before making any attempt to collect the disputed amount.

452 U.S. at 234–36 (footnote omitted).

In this case, the alleged billing error was set out on the statement that American Express transmitted on September 21, 2009.  To trigger any obligation under the FCBA, therefore, American Express must have received Plaintiff's written notice, at the address disclosed on the statement, by November 20, 2009.  Plaintiff did not even send his "notice" until December 4, 2009.  And when he sent it, he did so to Mr. Linville in New York City, an address that is not contained on his statement.[15]  Thus, even if the FCBA had applied to the Credit Card—which

---

[15] Plaintiff asserts that the billing inquiry address was not properly disclosed on the Credit Card statement because none of the addresses on the statement were expressly labeled "billing inquiries."  Neither the FCBA itself nor the regulations implementing it, however, require such a label.  See 15 U.S.C. § 1637(b)(10) (requiring disclosure of "[t]he address to be used by the creditor for the purpose of receiving billing inquiries from the obligor"); 12 C.F.R. § 226.7(b)(9) (2011) (requiring disclosure of "[t]he address to be used for notice of billing errors").  And the Federal Reserve Board's official interpretive commentary of the regulations provides only that the statement "should provide the general purpose for the address" and that "a detailed explanation or particular wording is not required."  12 C.F.R. pt. 226, Supp. I cmt. 7(b)(9)-1 (2011).

the Court finds it did not—American Express did not in this case have an

obligation to proceed under the FCBA because Plaintiff did not meet the statute's

predicate requirements.[16]

       3.    *GFBPA Claim*

In the R&R, Judge King determined that Plaintiff failed to respond to

American Express's argument that the GFBPA cannot apply to cases already

regulated by the FCBA.  She found that Plaintiff did not oppose this argument and

recommended that summary judgment be granted to American Express on the

GFBPA claim.  Plaintiff objects.

In his objection, Plaintiff quotes at length from 1st Nationwide Collection

Agency, Inc. v. Werner, 654 S.E.2d 428 (Ga. Ct. App. 2007), for the proposition

that a violation of the FCBA constitutes a violation of the GFBPA.  He alleges that

he presented this argument to Judge King.  He did not.  Although Plaintiff's brief

in opposition to the Motion for Summary Judgment contains one citation to

Werner ([47] at 19), the brief does not argue how Werner applies to American

---

[16] Plaintiff also asserts that American Express violated the FCBA because Ms.
Mutti's letter of December 30, 2009, failed to include a payment due date.  The
FCBA does not require that a creditor's response letter include a payment due date.
The Act requires only that the creditor refrain from taking further action after
sending the letter for the period of time "as is provided under the credit agreement
with the obligor for the payment of undisputed amounts."  See 15 U.S.C.
§ 1666a(a)–(b).

Express's argument.  Plaintiff's argument in his objection based on <u>Werner</u> is new. In reviewing a magistrate judge's report and recommendation, the Court does not consider objections based on arguments not raised before the magistrate judge. <u>See</u> <u>Williams v. McNeil</u>, 557 F.3d 1287, 1292 (11th Cir. 2009).  Plaintiff's objection to the R&R on this issue is overruled.

Even if the Court did consider Plaintiff's new argument, the Court would grant summary judgment to American Express on the GFBPA claim because the Court has determined that American Express did not violate the FCBA.[17]

IV.   **CONCLUSION**

Having conducted a *de novo* review of the issues to which Plaintiff has objected and finding that all of Plaintiff's objections are overruled, and having reviewed the remainder of the R&R, and finding that the Magistrate Judge did not plainly err, the Court adopts the R&R.  Accordingly,

---

[17] Plaintiff also asserts that American Express's debt collection actions could constitute a GFBPA violation independent of the FCBA if "Plaintiff is a consumer."  The GFBA applies only to "consumer transactions."  Ga. Code Ann. § 10-1-393(a).  A "consumer transaction" under the GFBPA, just like "consumer credit" under the FCBA, must be "primarily for personal, family, or household purposes."  <u>Id.</u> § 10-1-392(a)(10); <u>see also</u> 15 U.S.C. § 1602(i).  For the same reasons that the Court concludes that the Credit Card is not an extension of consumer credit under the FCBA, the Credit Card is not a consumer transaction under the GFBPA.

20

**IT IS HEREBY ORDERED** that Magistrate Judge King's Final Report and Recommendation [56] is **ADOPTED** and Plaintiff's Objections to the R&R [57] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant American Express Travel Related Service Co., Inc.'s Motion for Summary Judgment [43] is **GRANTED**.

**SO ORDERED** this 24th day of July, 2012.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE